UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DOMINIQUE M. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:13-CV-676 JD |
| | ) |
| HHC INDIANA, INC. d/b/a | ) |
| MICHIANA BEHAVIORAL HEALTH | ) |
| | ) |
| Defendant. | |

## OPINION AND ORDER

### I. Background and Procedural History

In this case the Plaintiff, Dominique Smith (Smith), sued her former employer, Defendant HHC Indiana, Inc., d/b/a Michiana Behavior Health (MBH), under 42 U.S.C. § 1981. That statute prohibits employers from discriminating against their employees on the basis of race or from retaliating against their employees for protesting such unlawful discrimination. Discovery has now closed in this matter and the Defendant moved for summary judgment under Federal Rule of Civil Procedure 56(a). [DE 33]. The Plaintiff responded to that motion [DE 42], and the Defendant replied to that response. [DE 43].

### II. Facts

For the purposes of this motion for summary judgment, the Court will construe all disputed facts in the light most favorable to the Plaintiff. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (at the summary judgment stage "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor.")

Smith, an African-American female, worked at MBH from November 2010 to April 2012. [DE 41-1 at 1]. She believes that her supervisor there, Director of Nursing Barbara

Gouker, treated her less favorably than her white coworkers. [DE 41-1 at 3]. In particular,[1] she points to a March 28, 2012 incident in which Gouker called Smith to her office and measured Smith's fingernails to ensure they were under a quarter of an inch long. [DE 42 at 6]. Gouker had previously informed staff that, for the sake of patient safety, all employees were required to limit the length of their nails to a quarter of an inch. [DE 41-1 at 4]. Smith believed that the measurement of her nails was racially discriminatory, as Gouker did not measure the fingernails of two other white employees, who appeared to have longer nails. *Id.* So, she met with MBH's human resources manager, Rebecca Norwicki, to voice her concerns. *Id.* She told Norwicki that she was thinking about quitting because she felt that Gouker was treating her differently on account of her race. *Id.*

Later that day, Smith underwent a routine tuberculosis (TB) skin test. [DE 41-1 at 2]. She got the results two days later, on March 30, 2012, when an MBH nurse called Smith and informed her that she had tested positive for TB. *Id.* The nurse told Smith she would need to stop working and have a chest x-ray to ensure that she did not have TB. *Id.* The nurse then called Gouker, who indicated that Smith should continue working until April 2 because MBH was short staffed and there were no employees available to replace Smith. *Id.* On April 2, Gouker told Smith that she would send Smith for an x-ray that evening or the following day. [DE 41-1 at 3]. On April 3, Gouker called Smith at home and asked her a series of questions provided to her by Infection Control Concepts to determine whether Smith possessed symptoms requiring an x-ray. [DE 35-1 at 27]. *Id.* Smith answered Gouker's questions, telling her, among other things, that on Friday, March 30, 2012 she had a fever of one hundred degrees but did not

---

[1] Smith also stated in her deposition that Gouker twice unnecessarily called her at home to ask her questions about work. On at least one of these occasions, Smith contends, her white coworkers would have been better situated to answer Gouker's inquiries than she was. [DE 35-2 at 21-22]. She does not assert this as a basis for her § 1981 claim in her response to the Defendant's motion for summary judgment.

appear to have any other symptoms of TB. *Id.* Gouker told Smith that, based on her answers, MBH was not going to provide Smith with a chest x-ray and she should see her personal physician. *Id.* Smith believes that Gouker made this decision to retaliate against her for voicing her grievances to Norwicki. [DE 41-1 at 5].

### III. Standard of Review

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014) (quoting *Anderson*, 477 U.S. at 248). To survive a motion for summary judgment, the party with the burden of proof must "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

### IV. Analysis

1. Retaliation Claim

Smith's response to the Defendant's motion for summary judgment indicates that she is pursuing a retaliation claim via a direct method of proof. While she cites some authority on the indirect method of proof, she does not claim to be able to recover under that theory, or otherwise analyze it in her brief. To the extent that the Plaintiff's brief may subtly allude to an indirect method of proof argument, it is not the Court's job to ferret it out. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *Fick v. Am. Acceptance Co., LLC*, No. 3:11 CV 229, 2012 WL 1074288, at *2 (N.D. Ind. Mar. 28, 2012) ("The court will not develop legal arguments for plaintiff. It is not the

3

obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.") (internal quotation marks omitted) Consequently, the Court will evaluate Smith's retaliation claim under only a direct method of proof.[2]

When proceeding via a direct method of proof, the elements of a retaliation claim are: (1) statutorily protected activity, (2) a materially adverse action and (3) a causal connection between the two. *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 404 (7th Cir. 2007) *aff'd*, 553 U.S. 442 (2008). The Court will examine each of these elements, viewing disputed facts in the light most favorable to the Plaintiff and drawing all justifiable inferences in her favor. *See Kvapil v. Chippewa Cnty., Wis.*, 752 F.3d 708, 712 (7th Cir. 2014).

*A. Statutorily Protected Activity*

A plaintiff engages in statutorily protected activity if she challenges conduct that she believes reasonably and in good faith to violate § 1981. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002)[3]. The conduct complained of by the plaintiff need not actually violate that statute. *Id.* "[S]tatutorily protected activity can range from filing formal charges *to voicing informal complaints to superiors*." *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir.

---

[2] Even if the Plaintiff had argued for an indirect method of proof, the Court's conclusion that she has not presented evidence that she suffered a materially adverse action would preclude her from recovering on that theory. *See Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003). Such an argument would also be foreclosed because Smith has not presented sufficient evidence to conclude that she was treated less favorably than similarly situated employees. She stated only that two of her coworkers did not have their nails measured, and that one of those coworkers shared her title. That is plainly not enough to satisfy this element of the indirect employment retaliation analysis. *See Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) ("In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them") (internal quotation marks omitted).

[3] While *Fine* and some other opinions cited in this order concern Title VII, Title VII precedent is generally applicable to § 1981 actions. *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) ("The substantive standards and methods of proof that apply to claims of racial discrimination and retaliation under Title VII also apply to claims under § 1981."); *see also Humphries*, 474 F.3d 387, 404. For a discussion of the limited ways in which Title VII and § 1981 differ, see *Bray*, 681 F.3d at 896 n. 2.

2009) (internal quotation marks omitted) (approving of Title VII analysis in other circuits and applying it in the context of the Americans with Disabilities Act). But while a report of discrimination to a supervisor may be statutorily protected activity under § 1981, the report must include a complaint of racial discrimination or sufficient facts to raise that inference. *See Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008). In contrast, general complaints about working conditions are not statutorily protected. *Id.*

Here, Smith submitted an affidavit[4] indicating that she met with Norwicki on March 28, 2012[5] and complained that Gouker was treating her more harshly than her white coworkers on account of her race. [DE 41-1 at 4]. Smith then told Norwicki that Gouker had measured her fingernails, but not those of her white coworkers. *Id.* While this may not be an ironclad allegation of differential treatment, it is also not a claim so "completely groundless … that no reasonable person possibly could have construed [it] as a case of discrimination." *Fine*, 305 F.3d at 752. At very least, it raises a triable issue of fact on the first element of the Plaintiff's claim.

B. *Materially Adverse Action*

To move her case to trial, Smith must also demonstrate that she suffered a materially adverse retaliatory action. A retaliation claim can be based on any materially adverse action,

---

[4] The Defendant invokes the familiar language that "self-serving statements contained in an affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record." [DE 43 at 1 n. 1]. But, the Seventh Circuit has recently "[laid] to rest the misconception that evidence presented in a 'self-serving' affidavit is never sufficient to thwart a summary judgment motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts." *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 n. 1 (7th Cir. 2014). Here, Smith's affidavit contains details of a meeting between herself and Norwicki. As such, it is based on personal knowledge and contains sufficiently specific facts to oppose a motion for summary judgment.

[5] Smith also asserts that her call to MBH's compliance hotline on April 3, 2012, was statutorily protected activity. [DE 42 at 6]. While that may be true, she does not point to any adverse employment action that occurred after her call which could support a retaliation claim.

whether that action occurred at work or outside of work (unlike a discrimination claim, which must be linked to an adverse employment action). *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). But, where that allegedly adverse action occurred at work, the Seventh Circuit has applied the traditional adverse employment action inquiry as a method of evaluating its materiality. *See, e.g., Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 703 (7th Cir. 2012); *see also Washington v. Illinois Dep't of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005) ("*Spearman v. Ford Motor Co.,* 231 F.3d 1080, 1086 (7th Cir.2000), and *Heuer v. Weil-McLain,* 203 F.3d 1021, 1023 (7th Cir.2000), say, or at least assume, that if the supposedly retaliatory acts occurred at work, the court asks whether the employer's action is severe enough to be an 'adverse employment action.'").

Adverse employment action has been defined broadly, but the "challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Arizanovska*, 682 F.3d at 704. "[M]aterially adverse employment actions can be categorized into three groups of cases involving: (1) the employee's current wealth such as compensation, fringe benefits, and financial terms of employment including termination; (2) the employee's career prospects thus impacting the employee's future wealth; and (3) changes to the employee's work conditions including subjecting her to humiliating, degrading, unsafe, unhealthful, or otherwise significant negative alteration in [her] work place environment." *Id.* (alteration in original).

Even viewed in the light most favorable to the Plaintiff, the record does not show that the decision to delay and ultimately deny Smith's chest x-ray was an adverse employment action. The Plaintiff argues that this subjected her to an unsafe or unhealthy work environment. More specifically, Smith's only substantial argument is that defendant harmed her by "deliberately

leaving [her] in the dark for over a week as to whether she was exposing her family and others to a contagious disease as pernicious as TB." [DE 42 at 8]. But this argument is unavailing. Other than showing that she had a low-grade fever on one night, Smith has presented no evidence that she had any signs or symptoms of tuberculosis. Smith's 10mm reaction to the skin test was minimally positive, and under certain conditions, could even be considered negative according to the CDC guidelines cited by the Plaintiff. [DE 41-4 at 7] (noting that 15mm rather than 10mm may be used as the "cut point" for determining a positive TB skin test result in low-risk healthcare workers). Furthermore, a positive skin test may indicate the presence of latent tuberculosis infection (LTBI), rather than tuberculosis disease. [DE 41-4 at 4]. LTBI is not infectious, asymptomatic and never develops into tuberculosis disease in 90-95% of people. *Id.* Thus, without further evidence substantiating the nature of her condition or explaining how her workplace was materially dangerous or unhealthy to herself, Smith has not demonstrated that not providing her with a diagnostic screening constitutes an adverse employment action.

The Plaintiff and the Defendant also devote considerable briefing to whether an Indiana statute, 410 IAC § 16.2-5-1.4, required MBH to provide Smith with a chest x-ray. It is not clear how a statutory mandate affects the adverse employment action analysis. If a statute requires an employer to provide a benefit to its employees, then that benefit might be considered an "employment benefit" for the purposes of the adverse employment action analysis. If that is the case, then not providing such an employment benefit might constitute an adverse employment action. So, if § 16.2-5-1.4 required MBH to provide Smith with a chest x-ray after her positive skin test, then that x-ray may have been an employment benefit. MBH then could have committed an adverse employment action when it refused to provide Smith the x-ray. The trouble with this argument is that § 16.2-5-1.4 does not appear to require MBH to provide Smith

7

with a chest x-ray. § 16.2-5-1.4(f)(2) merely stipulates that "[a]ll employees who have a positive reaction to the skin test shall be required to have a chest x-ray and other physical and laboratory examinations in order to complete a diagnosis." It does not require the employer to provide the chest x-rays or to do so for free—a reading of the statute that the Plaintiff's own testimony supports. [DE 35-2 at 36]. And there is no other showing in the record that MBH typically provided employees who reacted positively to a TB skin test with free chest x-rays. Accordingly, Smith does not appear to have been entitled to a chest x-ray as a benefit of her employment.

The Plaintiff also alleges that she suffered an adverse employment action because she was constructively discharged. To "demonstrate constructive discharge, the plaintiff must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." *E.E.O.C. v. Univ. of Chicago Hospitals*, 276 F.3d 326, 331 (7th Cir. 2002). The Plaintiff says she was constructively discharged "by MBH's cavalier treatment of [her] positive TB test." [DE 42 at 8].

But it is illogical to claim constructive discharge based on the denial of a claimed employment benefit. For if Smith needed a chest x-ray, quitting her job would do nothing to get her one. Furthermore, even if Smith were entitled to a chest x-ray, and MBH declined to provide it to her, the denial of preventative care hardly makes working conditions "so intolerable that a reasonable person would be forced to quit." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004) (quoting *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1160 (C.A.8 1999)). Accordingly, her constructive discharge claim fails, and the Court finds that the Plaintiff has not presented sufficient evidence for a reasonable jury to conclude that she suffered an adverse employment action.

*C. Causal Connection*

The Plaintiff has also failed to present a triable issue of fact as to the causal connection between her discrimination complaint and MBH's decision not to provide her a chest x-ray. A plaintiff can establish such a causal link via direct evidence, such as an employer admission, or by presenting a "convincing mosaic" of circumstantial evidence that permits an inference that the adverse employment action at issue was motivated by discrimination. *Coleman*, 667 F.3d at 860. "[C]ircumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (internal quotation marks omitted).

Here, the Plaintiff relies on the mosaic approach. Three main types of evidence can be used to prove a causal link this way: (1) a showing of suspiciously close timing between the statutorily protected activity and the adverse employment action, (2) pretextual reasons advanced by the employer for adverse employment actions and (3) evidence that similarly situated employees were treated differently. *Coleman*, 667 F.3d at 860. The Plaintiff presents evidence of suspicious timing and pretext.

*i. Pretext*

Smith asserts that the MBH's explanation for not providing her a chest x-ray was pretextual. "To show pretext, an employee must present evidence suggesting that the employer is dissembling. The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the [adverse employment action]." *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 565 (7th Cir. 2015) (citation and internal quotation marks omitted). To meet this burden, Smith must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in [the employer's] asserted

9

reason that a reasonable person could find [it] unworthy of credence." *Coleman*, 667 F.3d at 852 (internal quotation marks omitted) (second alteration in original).

She argues that the Defendant disingenuously cited staffing concerns as a reason for delaying the chest x-ray. [DE 42 at 10]. She says that this explanation was pretextual, because even if MBH was short staffed, it should have been able to spare her for a short procedure. *Id*. But the record does not indicate that Gouker ever said that MBH could not provide Smith an immediate chest x-ray because it was short staffed. Rather, Smith says in her affidavit that Gouker told her that she should keep working because MBH was short staffed. [DE 41-1 at 2]. So, Smith's purported evidence of pretext does not relate to her proffered adverse employment action at all.

Furthermore, the Defendant provided uncontested evidence that Gouker consulted with Infection Control Concepts about Smith's case. [DE 35-1 at 27]. Gouker then called Smith and asked her a series of questions provided to her by Infection Control Concepts designed to evaluate Smith's symptomatology. *Id.* Based on Smith's answers, which indicated that she had a fever for one night but no other symptoms, Gouker concluded that an x-ray was not necessary and referred Smith to her family physician. *Id*. This provides a seemingly legitimate, non-pretextual explanation for Gouker's initial decision to delay Smith's x-ray, and her subsequent conclusion that an x-ray was not necessary. And Smith provides no evidence to undermine that conclusion.

The Plaintiff also contends that it is suspicious that Gouker changed her mind—first saying that she would send Smith for an x-ray and later concluding that it was unnecessary. [DE 42 at 10]. But she does not identify any pretextual rationale for this shift. And in any event, leaping to the conclusion that Gouker changed her mind due to Smith's complaint is too

speculative. *See Dismuke v. Rockford Hous. Auth.*, No. 98 C 50016, 2000 WL 516198, at *6 (N.D. Ill. Apr. 25, 2000). This is particularly true where both Gouker's decision to provide an x-ray and her subsequent change of course happened after Smith's complaint (in contrast to a circumstance where a supervisor made an initial decision, which was followed by a complaint and then a change in that decision). Accordingly, Smith has failed to present evidence of pretext that would allow a reasonable jury to conclude that Gouker's decision to deny her a chest x-ray was motivated by retaliation.

  *ii. Timing*

  Smith also argues that the short period of time between her complaint and Gouker's equivocation and ensuing decision to deny her a chest x-ray raises an inference of retaliation. "Coupled with corroborating evidence of retaliatory motive, evidence of suspicious timing ... can sometimes raise an inference of a causal connection, but it is rarely sufficient by itself." *Bray*, 681 F.3d at 907 (internal quotation marks omitted) (alteration in original); *see also Mintz v. Caterpillar Inc.*, No. 14-1881, 2015 WL 3529396, at *7 (7th Cir. June 5, 2015).

  Since Smith is unable to demonstrate pretext, she is forced to rely on evidence of suspicious timing to link MBH's decision not to provide her a chest x-ray to her discrimination complaint. But this case is not an exception to the general rule in this circuit that timing alone is rarely sufficient to demonstrate causation. Smith has alleged a single complaint followed by a single instance of purported retaliation. That falls far short of other cases where Plaintiffs have demonstrated a "sequence of protected activity and punitive action" (and based on Seventh Circuit case law, it is questionable whether even such comparatively strong evidence of suspicious timing could, without more, demonstrate causation). *Coleman,* 667 F.3d at 861 (noting that a "sequence of protected activity and punitive action" may support an inference of

discrimination, though indicating that it may not be enough to establish causation by itself). Any timing-based inference of discrimination is further undermined by the apparent coincidence that Smith's annual TB test was scheduled on the same day she met with Norwicki. Accordingly, the Court finds that no reasonable jury could conclude that there was a causal link between Smith's complaint to Norwicki and Gouker's decision not to provide her with a chest x-ray.

2. Discrimination Claim

While Smith's complaint alleged both employment discrimination and retaliation under § 1981, she no longer appears to be pursuing a discrimination claim. In any event, Smith's retaliation claim would fail, because she has failed to demonstrate that she suffered an adverse employment action, and that is an essential component of a discrimination claim, whether proceeding via a direct or an indirect method of proof. *See Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234-235 (7th Cir. 2014). Additionally, her inability to establish a causal connection between any discriminatory act and her alleged adverse employment action would foreclose any discrimination claim she may have sought to prove via a direct method of proof. *See Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013). And her failure to identify other, similarly-situated employees that were treated more favorably than she was would preclude any claim she may have sought to prove via an indirect method of proof. [6] *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Consequently, the Court rejects Smith's discrimination claims, to the extent that she is still pursuing them.

---

[6] *See* fn. 2.

## V.  Conclusion

Based on the evidence the Plaintiff has presented, a reasonable jury could not conclude that she suffered an adverse employment action, or that there was a causal link between her complaint and the retaliatory action she alleges.  Consequently, the court **GRANTS** the Defendant's summary judgment motion [DE 33] and directs the Clerk to enter judgment for HHC Indiana, Inc. d/b/a Michiana Behavioral Health against Dominique Smith.

SO ORDERED.

ENTERED:  August 6, 2015

      /s/ JON E. DEGUILIO
Judge
United States District Court